

UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF NEW YORK

---

ROY DEN HOLLANDER,
                Plaintiff,

v.

JUDGE FREDERIC BLOCK,
in his official capacity,
                Defendant.

Civil Action No. 10 1713

GARAUFIS, J.

POLLAK, M.J

---

# COMPLAINT FOR INFRINGEMENT OF THE FREE SPEECH CLAUSE OF THE FIRST AMENDMENT OF THE U.S. CONSTITUTION

## I. Introduction

1. This action challenges the sacrifice of freedom of speech to ideology that is now commonplace in the exercise of federal power by federal officials to impose on all one brand of thinking, one brand of belief, and one brand of speech—that of ideological Feminism and political correctness, which have become the new McCarthyism.

2. Today, those devoted to or fearful of ideological Feminism and political correctness control the three branches of the federal government, which is the very definition of tyranny, according to James Madison: "The accumulation of all powers, legislative, executive, and judiciary, in the same hands, whether of one, a few, or many, and whether hereditary, self appointed, or elective, may justly be pronounced the very definition of tyranny." *Federalist Paper No. 47*.

3. Senior Judge Block of the U.S. Eastern District Court of New York, appointed by former President Clinton, is one such official who has executed his duties in accordance with the dictates of Feminist and politically correct doctrine rather than the U.S. Constitution and federal laws.

4. In a copyright infringement action, Judge Block, in his official capacity, retaliated against the plaintiff, an attorney, for exercising his freedom of speech outside the courtroom in six essays expressing anti-feminist and politically <u>incorrect</u> concepts. Judge Block rebuked the plaintiff for "his aggressively anti-'Feminazi' world view," although it is an evolutionary correct perspective.

5. Copyright infringement actions are not supposed to deal with the concepts expressed only whether others have used the same expressions, the same arrangement of words and sentences that the author wrote without the author's permission.

6. Judge Block ignored this basic concept of copyright law by approving the unauthorized use of the plaintiff's six essays because the essays were not politically correct and not consistent with the type of speech demanded by America's Feminist establishment.[1]

7. Many federal employees, such as Judge Block, have forgotten that the purpose behind the First Amendment is "to protect unpopular individuals from retaliation—and their ideas from suppression—at the hand of an intolerant society," *McIntyre v. Ohio Elections Com'n*, 514 U.S. 334, 357 (1995).

8. The pernicious effect of any belief system controlling thought and speech is that when a person does not reiterate its dogma, conformists, as in cults, use the person's words, and the thoughts they express, against him. That way conformists don't have to bother with arguing the merits of unacceptable statements. The statements are axiomatic unacceptable, and so is the person making them, meaning he no longer has the right to fight within established institutions for his rights.

9. The danger of federal officials making decisions according to whether a citizen conforms to some doctrine is that when such decision-making becomes widespread, as it now is in America with respect to ideological Feminism and political correctness, the inevitable result is a brand of totalitarianism not too far distant from Orwell's <u>1984</u>.

## II. Parties

10. The plaintiff is an attorney and resident of New York, New York.

11. The plaintiff wrote six essays that were registered with the U.S. Copyright Office.

12. The plaintiff brought a copyright infringement action, *Den Hollander v. Deborah Donovan and Paul Steinberg, 08 cv 4045*, in the U.S. Eastern District Court of New York against two attorneys for submitting the essays without the author's permission in three different courts in three different cases.

13. The essays had nothing to do with the issues in those actions. They were simply submitted by the two attorneys to prejudice the courts against the plaintiff for his "offensive," "misogynistic," and "inflammatory" writings, according to attorney Donovan; and for his advocacy of "rape and murder," "issues with gender identity," "obsession" with bodies, and the "physical" danger he posed to certain females, according to attorney Steinberg,

14. Judge Block was assigned the case. Before being appointed a district court judge, attorney Block worked at a number of small law firms or as a solo practitioner on Long Island.

---

[1] Establishment means a unitary belief system held by enough influential persons so that it dominates over other beliefs in a society. In America today, that belief system is ideological Feminism.

## III. Facts

15. Judge Block's conduct during the proceedings show that his ruling in favor of the defendants was based on the defendants' demonization of the plaintiff in which the Judge concurred and the Judge's personal aversion, or feigned aversion, to what the essays communicated.

16. At a pre-motion conference on February 6, 2009, Judge Block revealed his focus on the ideas communicated in the essays when his very first question to the plaintiff asked what the essays were about.

17. Judge Block's question was patently irrelevant, but foretold that he would decide the case not based on copyright law but that the contents of the writings were unpopular speech as determined by Feminist and politically correct doctrine.

18. Copyright infringement actions do not concern the subject matter of what is communicated or whether the ideas conform to a certain ideology—at least not in America. Copyright is only about whether someone used the same words, sentences, and paragraphs that the author wrote without the author's permission, and in a situation that does not further individual creativity by someone else. (Situations that further creativity by others who are not the original author are called "fair use").

19. As a result of Judge Block's question focusing on the subject matter of the essays, one of the infringing attorneys, Steinberg, proceeded to claim the subject matter of the essays showed that the plaintiff was a rapist, murderer, one who raised money for such, and a dangerous criminal.

20. During Steinberg's effort to prejudice Judge Block against the plaintiff, the Judge's demeanor clearly turned hostile toward the plaintiff.

21. When the plaintiff tried to respond to Steinberg's false accusations, Judge Block angrily cut the plaintiff off by saying with a belligerent demeanor that he did not want to hear the plaintiff's response, which violated Judicial Cannon 3(A)(4) by not allowing the plaintiff a "full right to be heard." *Code of Judicial Conduct for United States Judges*.

22. From that point on, throughout the case, the defendants exploited Judge Block's acceptance of personal attacks against the plaintiff that criticized the content of his speech, and, in Steinberg's case, falsely depicted the plaintiff's character by making unfounded allegations of "misdeeds" that the Judge extensively quoted in his *Order* at pp. 3-4.

23. On February 18, 2010 at oral argument for summary judgment, Judge Block showed extraordinary deference to a clearly intoxicated Steinberg, and extensively questioned Donovan's attorney on copyright law, but not one question concerning the law was asked of the plaintiff.

24. At that oral argument, Judge Block decided to rule in the defendants' favor, which effectively meant the defendants could use the plaintiff's copyrighted essays as they pleased.

3

25. In doing so, Judge Block sarcastically criticized the plaintiff for "his unique personality and talents" and lamented that "unfortunately" because of such the "interesting issues[s]" of the case had been corrupted, meaning the Judge was not going to fully consider the law or the plaintiff's papers because he was not going to decide in favor of the plaintiff.

26. He was not going to decide in favor of the plaintiff because the plaintiff's essays expressed anti-feminist tenets.

27. The plaintiff objected to Judge Block's ruling as simply retaliating against him for exercising his First Amendment right to free speech.

28. Judge Block's written *Order* confirms that his decision against the plaintiff was based on his disapproval of how the plaintiff exercised his freedom of speech outside the courthouse when the Judge wrote in the beginning of the *Order* that the essays "convey [the plaintiff's] aggressively anti-'Feminazi' world view...."[2] *Order p. 2.*

29. Since copyright law only deals with the mode of expression and not the ideas, the only possible reason for emphasizing the plaintiff's beliefs at the beginning of the written decision was to justify punishing the plaintiff for daring to exercise his freedom of speech, since he does not think and speak as the politically correct want.

30. Judge Block made his decision that the defendants did not infringe the plaintiff's essays based on his personal disapproval of the plaintiff's "world view" and the essays' concepts. By doing so, he ignored the admonition of Justice Oliver Wendell Holmes, that "[Judges] should be eternally vigilant against attempts to check the expression that [they] loathe."

31. Judge Block's disregard for the plaintiff's rights was only surpassed by his disregard for the plaintiff's physical safety. Defendant Steinberg, 20 years younger than the plaintiff, had previously physically assaulted the plaintiff in the hallway of a New York City court by trying to choke him. The plaintiff asked Judge Block for a bailiff to escort the plaintiff out of the building in order to assure against another such attack by Steinberg. Judge Block dismissed the request as having nothing to do with the oral argument before him. Had the plaintiff been a female, Judge Block never would have dared do that, but today, any injury that befalls a man is considered deserved.

32. Judge Block did not rule on the facts, did not rule on the law but rather in accordance with the ideology of the Feminist establishment even though "[a] judge shall not be swayed by partisan interests, public clamor, or fear of criticism." *Code of Judicial Conduct for United States Judges*, Canon 3(B)(2).

---

[2] "Feminazi" was quoted from one of the plaintiff's essays. Russ Limbaugh is credited with inventing the term in 1992. The plaintiff disagrees, since he has been using the term since 1991. At the very least, the plaintiff should be credited as a co-author. Moreover, the on-line version of the Merriam-Webster dictionary defines Feminazi as "an extreme or militant feminist." That's probably the equivalent of an ideological feminist. So "Feminazi" communicates a part of reality, people who actually exist, but American Newspeak prohibits its use.

4

33.  Judge Block violated the First Amendment right of the plaintiff because the plaintiff had dared in his essays to take the First Amendment's free speech clause literally, just as Justice Brandeis did in his concurring opinion in *Whitney v. Cal.*, 274 U.S. 357, 375 (1927):

> "Those who won our independence believed that the final end of the State was to make men free to develop their faculties .... They valued liberty both as an end and as a means. They believed liberty to be the secret of happiness and courage to be the secret of liberty. They believed that freedom to think as you will and to speak as you think are means indispensable to the discovery and spread of political truth; that without free speech and assembly discussion would be futile ...; that the greatest menace to freedom is an inert people; that public discussion is a political duty; and that this should be a fundamental principle of the American government. They recognized the risks to which all human institutions are subject. But they knew that order cannot be secured merely through fear of punishment for its infraction; that it is hazardous to discourage thought, hope and imagination; that fear breeds repression; that repression breeds hate; that hate menaces stable government; that the path of safety lies in the opportunity to discuss freely supposed grievances and proposed remedies; and that the fitting remedy for evil counsels is good ones. Believing in the power of reason as applied through public discussion, they eschewed silence coerced by law—the argument of force in its worst form. Recognizing the occasional tyrannies of governing majorities, they amended the Constitution so that free speech ... should be guaranteed."

34.  Judge Block's decision is just one of many in a current trend by judicial decisions across this land in both state and federal courts that skew the law so as to coerce into silence any criticism of ideological Feminism and political correctness.

35.  Ideological corruption has become commonplace because many judges have forgotten that "in times of repression, when interests with powerful spokes[women] generate symbolic pogroms against nonconformists, the federal judiciary, charged by Congress with special vigilance for protection of civil rights, has special responsibilities to prevent an erosion of the individual's constitutional rights." Younger v. Harris, 401 U.S. 37, 58 (Douglas, J. dissenting)(1971).

### IV. Relief Sought

36.  The plaintiff seeks nominal damages of one dollar.

37.  The plaintiff also seeks a declaratory judgment that Judge Block, acting in his official capacity, violated the plaintiff's First Amendment right to freedom of speech by permitting the infringement of the six essays because the content of those writings offended Feminist and politically correct tenets.

5

## V. Sovereign Immunity

38. Sovereign immunity for the United States is waived based on one of its officers acting in his official capacity but unconstitutionally.

## VI. Subject Matter Jurisdiction

39. This Court has subject matter jurisdiction over this action under 28 U.S.C. 1331 because this action raises a federal question challenging a federal official, acting in his official capacity, for violating the First Amendment to the U.S. Constitution.

## VII. Personal Jurisdiction

40. This Court has personal jurisdiction over the defendants in accordance with Fed. R. Civ. P. 4(i)(2).

## VIII. Venue

41. This Court has venue under 28 U.S.C. 1391(e)(2) because the events giving rise to this action occurred in the Eastern District of New York.

## IX. Conclusion

42. "It is firmly settled that under our Constitution the public expression of ideas may not be prohibited merely because the ideas are themselves offensive to some of their hearers." Street v. New York, 394 U.S. 576, 592 (1969).


Dated: April 12, 2010
New York, N.Y.

Roy Den Hollander, Esq.
Attorney and plaintiff
545 East 14 Street, 10D
New York, N.Y. 10009
(917) 687-0652